UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TONY JOSEPH GEORGE AND RAYNELL WICKWARE, on behalf of themselves and others persons similarly situated, <br><br> v. <br><br> GRAYCO COMMUNICATIONS, L.P., and PROTEK COMMUNICATIONS, INC. <br> *Defendant.* | Civil Action <br> 2:18-cv-08953 <br> Section I (Judge Africk) <br> Mag. (1) (Judge van Meerveld) <br><br><br> JURY DEMANDED |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING JOINT EMPLOYER STATUS AND PLAINTIFFS' WILLFULLNESS AND RETALIATION CLAIMS UNDER THE FLSA**

MAY IT PLEASE COURT:

Defendant, Grayco Communications L.P. ("Grayco" or "Defendant Grayco"), pursuant to L.R. 7.4, respectfully submits this Memorandum of Law in support of its Motion for Partial Summary Judgment Regarding Joint Employer Status and Plaintiffs' Willfulness and Retaliation Claims under the FLSA ("Motion for Partial Summary Judgment").

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The issues before the Court in Defendant's Partial Motion for Summary Judgment are, (1) whether Grayco jointly employed the Plaintiffs who worked for Protek Communications, Inc. (hereinafter referred to as the "Protek Plaintiffs") [1]; (2) whether Grayco engaged in actions that constitute a willful violation of the FLSA; and (3) whether Grayco engaged in retaliation in violation of the FLSA against Plaintiffs because of their filing and/or participation in this lawsuit.

---

[1] The "Protek Plaintiffs" are the following Plaintiffs:  Joseph Desir, Raynard Hall, Pierre Peterson, Benny Taylor, Raynell Wickware, Iren Bethley, Alsen Caine, Randy Carey, Jonaser Castaneda, Haseem Cook, Winston Johnson, Ricardo Newman, Byron Taylor, Darin Toler, Jarvis Weber, and Dwayne White.  Grayco asserts that the Protek Plaintiffs designation for the purposes of this Motion applies to all Plaintiffs who worked for Protek only during the relevant time period.

Viewed in the light most favorable to Plaintiff, the undisputed facts unequivocally demonstrate that Grayco was not a joint employer under either the Fair Labor Standards Act ("FLSA") or Louisiana law as Grayco did not engage in any of the activities designated under the economic realities test to fall under employer status.  Grayco did not have the authority to hire or fire the Protek Plaintiffs; Grayco did not pay the Protek Plaintiffs or have any input on how the Protek Plaintiffs were paid; Grayco did not supervise the Protek Plaintiffs or control their work schedule; and Grayco did not maintain any employment records for Protek or the Protek Plaintiffs. Rather, Protek unequivocally controlled, executed and maintained all of the aforementioned duties with regards to the Protek Plaintiffs. Further, the business contract between Protek and Grayco, in effect during the relevant time period contained specific terms stating the companies would not be joint employers and further stated that it was Protek's contractual obligation to maintain, control, and pay its own work force (separate from Grayco's work force).

Plaintiffs' claim that Grayco acted "willfully" by violating the Plaintiffs' rights under the FLSA also fails because there is no evidence that Grayco knew that its pay structure violated the FLSA or that it ignored complaints brought to its attention.  At most, Grayco may have been merely negligent, however, this does not rise to the level of a willful violation of the FLSA.  Accordingly, there is no evidence of willfulness and the two-year statute of limitations should be applied to all Plaintiffs.

Additionally, Plaintiffs' retaliation claims fail as a matter of law.  Specifically, Plaintiffs allege that they, (1) received less compensation, (2) received less job assignments, (3) received more charge-backs, (4) were not provided tax documents and (5) were not provided paychecks, as a result of their participation in this lawsuit.  Importantly, some of the alleged actions listed by Plaintiffs are not adverse actions under the FLSA therefore, Plaintiffs are unable to establish a

prima facie case of retaliation.  Additionally, there is no evidence of a causal link between any alleged adverse action and the protected activity.  Further, assuming (for purposes of this Motion only) that Plaintiffs can meet their *prima facie* burden, Grayco has established a legitimate, non-retaliatory reason for each of the actions taken (if any) and Plaintiffs do not have any evidence to show that these reasons were a pretext for FLSA retaliation.

Accordingly, as explained in more detail herein, Grayco respectfully requests that this Court grant partial summary judgment in its favor.

## II.  SUMMARY OF RELEVANT AND UNDISPUTED FACTS

### A.  GRAYCO'S BUSINESS IN LOUISIANA

Grayco is a Texas-based company that provided cable installation services in Louisiana for Cox Communications' customers beginning in 2014 and ending in 2019.[2]  During the time that Grayco did business in Louisiana, Nathan Williams was its Vice President of Operations and was responsible, in part, for hiring and firing decisions regarding Grayco's cable technicians.[3]  Grayco also employed its own managers and supervisors who supervised the work of its cable technicians in Louisiana.[4]  When Grayco began its operations in Louisiana, many of its cable technicians were hired from a company that was performing the same cable installation type work and had decided to close its business.[5]  This company was called Irtanki.[6]  The cable technicians worked for Irtanki as independent contractors.[7]

---

[2] Nathan Williams Deposition, 18:18-24, Ex. 3.
[3] Nathan Williams Deposition, 12:15-17; 104:17, Ex. 3.
[4] Nathan Williams Deposition, 26:4-23, Ex. 3.
[5] Nathan Williams Deposition, 28:2-31:3, Ex. 3.
[6] Nathan Williams Deposition, 37:10-38:8, Ex. 3.
[7] Nathan Williams Deposition, 37:10-38:8, Ex. 3.

## B.     PROTEK'S BUSINESS IN LOUISIANA

Protek Communications, Inc. is a separate company from Grayco owned by Hussein Zayat and operated by Lawrence Vu, its Director of Operations.[8]  A group of Plaintiffs who opted in to this lawsuit, during the relevant time period worked directly for Protek as cable technicians and were classified by Protek as independent contractors (the "Protek Plaintiffs").[9]  During its operations in Louisiana, Protek had its own supervisors, that were not employed by Grayco.[10]

Vu was responsible for making sure Protek had the right staff (including hiring and firing installers/cable technicians and supervisors).  He also was responsible for Protek's payroll.[11]  Further Protek had its own manager (Mario) and human resources representatives (Terri Bullock).[12]  Grayco had its own managers in its Louisiana operations and its own human resources representative (Beverly Gutierrez).[13]

Protek Plaintiffs attended separate meetings to receive instructions from Protek supervisors and managers regarding their work.  They only reported to the same warehouse to pick up equipment as Grayco cable technicians however, this was not a meeting.  Vu testified that Grayco and Protek meetings were always separate as Grayco was "really hard on co-employment."[14]  Protek also had separate HR personnel, Terri Bullock who was never employed by Grayco.[15]

---

[8] Lawrence Vu Deposition, 13:6-21, Ex. 1.
[9] The "Protek Plaintiffs" are the following Plaintiffs:  Joseph Desir, Raynard Hall, Pierre Peterson, Benny Taylor, Raynell Wickware, Iren Bethley, Alsen Caine, Randy Carey, Jonaser Castaneda, Haseem Cook, Winston Johnson, Ricardo Newman, Byron Taylor, Darin Toler, Jarvis Weber, and Dwayne White.  Grayco asserts that the Protek Plaintiffs designation for the purposes of this Motion applies to all Plaintiffs who worked for Protek only during the relevant time period.
[10] Lawrence Vu Deposition, 21:5-9, Ex. 1.
[11] Lawrence Vu Deposition, 11:18-12:16, Ex. 1.
[12] Lawrence Vu Deposition, 13:10-22, Ex. 1.
[13] Nathan Williams Deposition, 24:9-27:20, Ex. 3; Lawrence Vu Deposition, 87:1-10, Ex. 1.
[14] Lawrence Vu Deposition, 86:13-15, Ex. 1.
[15] Lawrence Vu Deposition, 86:22-25, Ex. 1.

## C.   **CONTRACT BETWEEN GRAYCO AND PROTEK**

Protek's Service Agreement contract with Grayco supports that this was the nature of the relationship with regard to the requirement that Protek engage its own supervision and control over its workforce.[16]  Specifically, the Protek Service Agreement states:

> **Contractor shall have a competent supervisor, who may be contacted at all times while Contractor's employees/personnel are performing the Services.**
>
> **Contractor must also provide one supervisor for every fifteen (15) technicians performing Services each day.[17]**

Importantly, the Service Agreement which governed the work relationship between Grayco and Protek specifically states that Defendant Protek was an independent contractor of Grayco and no joint employer relationship existed;

> "**7.     Independent Contractor Status**
>
> Contractor (referring to Protek) is an independent contractor, and neither Contractor nor Contractor's employees or contract personnel are, or shall be deemed, Grayco's employees.   In its capacity as an independent contract, Contractor agrees and represents and Grayco agrees, as follows:
>
> (a)  Contractor has the right to perform services for others during the term of this Agreement.
> (b)  Contractor has the sole right to control and direct the means, manner and method by which Services will be performed.
> (c)  Contractor has the right to hire assistants as subcontractors or use employees to provide the Services.
> (d)  The Services shall be performed by Contractor, Contractor's employees or contract personnel, and Grayco shall not hire, supervise, or pay any assistants to help Contractor.
> (e)  Neither Contractor nor Contractor's employees or contract personnel shall receive any training from Grayco in the professional skills necessary to perform the Services.
> (f)  Neither Contractor nor Contractor's employees or contract personnel shall be required by Grayco to devote full time to the performance of the Services.[18]
> …

---

[16] Service Agreement - Protek/Grayco (GRAYCO001039), ¶6, p. 3 Ex. 2.
[17] Service Agreement - Protek/Grayco (GRAYCO001039), ¶6, p. 3 Ex. 2.
[18] Service Agreement - Protek/Grayco (GRAYCO001039-1040), ¶7, pp. 3-4, p. 3 Ex. 2.

23.     **No Partnership and/Joint Employer Relationship**

23.1    Nothing in this Agreement shall operate or be construed as making Grayco and Contractor either partners, joint venturers, principals, joint employers, fiduciaries, agents or employees of the other.  The relationship between Grayco and Contractor will be that of an independent contractor relationship.  No employee, agent, affiliate or contractor retained by Contractor to perform work on behalf of Contractor or affiliates under this Agreement will be deemed an employee, agent, or contractor of Grayco or its affiliates. Contractor's obligation to comply with applicable state, federal or local laws does not create an employer-employee relationship between Grayco and Contractor or any of Contractor's personnel."[19]

## D.  PROTEK'S CABLE TECHNICIANS WORK DIRECTLY FOR PROTEK NOT GRAYCO

### (i)     Grayco did not hire the Protek Plaintiffs.

Vu, hires and fires Protek's cable technicians.[20]  He is not an employee, manager or corporate representative of Grayco.[21]  Grayco had its own Vice President of Operations, Nathan Williams whohad the ability to hire or fire Grayco cable technicians.[22]  Some of Grayco's former cable technicians decided to cease working for Grayco and then made the decision to work for Protek.[23]  Grayco did not designate or demand that any of its cable technicians work for Protek.[24] In fact, Protek required that former Grayco cable technicians apply for work with Protek, a process which including completing an application, I-9 forms and direct deposit forms.[25]  Grayco was not involved in this hiring process.

---

[19] Service Agreement - Protek/Grayco (GRAYCO001046), ¶23, p. 10, Ex. 2.
[20] Lawrence Vu Deposition, 11:18- 12:9, Ex. 1.
[21] Lawrence Vu Deposition, 11:18- 12:9, Ex. 1.
[22] Nathan Williams Deposition, 104:1-17, Ex. 3.
[23] Nathan Williams Deposition, 223:20-25, Ex. 3.
[24] Nathan Williams Deposition, 218:7-225, Ex. 3.
[25] Lawrence Vu Deposition, 23:13-22, Ex. 1.

**(ii)** <u>**Grayco did not determine the Protek Plaintiffs' compensation and did not pay them**</u>**.**

Grayco did not give Protek any guidance or instructions on how to pay or classify its cable technicians.[26] Vu confirmed that Protek solely determined the rate of pay for Protek cable technicians stating:

> **Q**: And who determines how much you're going to pay per point to the technician?
>
> **A**: We've determined that, Protek has determined that because that's what we've issued out on the price list when we met with them the first time we met.
>
> **Q**: The first time you met with who?
>
> **A**: The technicians…[27]

Mr. Vu further testified:

> **Q**: Does Grayco determine the rate of pay that Protek is going to pay its independent contractors?
>
> **A**: No. They don't.[28]

**(iii)** <u>**Grayco did not control the terms and conditions of the Protek Plaintiffs work including their work schedule, supervision and training**</u>**.**

Protek confirmed that Grayco did not assign jobs to Protek cable technicians, this was a function done by Cox.[29] During its operations in Louisiana, Protek had its own supervisors, that were not employed by Grayco.[30]  Protek employed supervisors Dwight Goines and Mario Gonzalez who were not employees of Grayco.[31]  Vu confirmed that Grayco does not supervise the Protek Plaintiffs stating:

---

[26] Nathan Williams Deposition, 205:17-24, Ex. 3.
[27] Lawrence Vu Deposition, 58:22-59:3, Ex. 1.
[28] Lawrence Vu Deposition, 115:7-9, Ex. 1.
[29] Lawrence Vu Deposition, 35:12-15, Ex. 1.
[30] Lawrence Vu Deposition, 21:5-9, Ex. 1.
[31] Protek Answers to Plaintiffs First Set of Interrogatories, Rog. No. 2, Ex. 4.

Q:      Does Grayco supervise Protek's independent contractors?

A:      They don't.[32]

Protek would contact Grayco to investigate a dispute about a Protek cable technician's chargeback.[33]   However, Grayco's authority to investigate this complaint with the provider, Cox Communications (the entity initiating the chargeback), did not determine rate or method of payment to the Protek Plaintiffs.[34]

**(iv)**      **Grayco did not maintain or keep Protek's employment records.**

Grayco did not monitor, keep or review Protek payroll records.[35]   Vu specifically testified that Grayco is not involved in the maintenance or keeping of Protek employment records:

**Q**:   And does Grayco determine how you, Protek, maintain your records, like personnel files or anything like that?

**A**:   They don't.[36]

**E.      GRAYCO DID NOT ENGAGE IN ANY WILLFUL VIOLATION OF THE FLSA**

At the time Grayco began operations in Louisiana, it classified its cable technicians as independent contractors.[37]   In doing so, Grayco followed the industry standards in Louisiana and the pay practices employed by multiple other cable subcontractor companies performing work for Cox Communications, and at the request of some of the Plaintiffs themselves.[38]   Grayco  hired cable technicians as independent contractors and paid them as such prior to November 2016 based

---

[32] Lawrence Vu Deposition, 115:4-6, Ex. 1.
[33] Lawrence Vu Deposition 71:3-9, Ex. 1.
[34] *Id.*
[35] Nathan Willaims Deposition, 209:1-14, Ex. 3.
[36] Lawrence Vu Deposition, 115:15-28, Ex. 1.
[37] Nathan Williams Depositions, 76:23-77:18, Ex. 3.
[38] Nathan Williams Deposition, 64:15-19, Ex. 3.

on this industry practice and knowledge of payment of other cable technicians working for Cox Communication through subcontracting companies in Louisiana.[39]

## F.   GRAYCO DID NOT RETALIATE AGAINST ANY PLAINTIFFS FOR FILING OR PARTICIPATING IN THIS LAWSUIT

After this lawsuit was filed and before Grayco made the business decision to cease operations in Louisiana, Grayco began receiving less fulfillment work from Cox, which is the type of work that was performed by Plaintiffs in Louisiana who worked for Grayco as cable technicians.[40]  The decrease in work assigned to Plaintiffs was not attributable to this lawsuit, but instead was attributed to Grayco receiving less work directly from Cox.  The work "is seasonal" and decrease in volume is because "work goes up and down.  It's just ebbs and flows of the business."[41]

## III.   ARGUMENT & AUTHORITIES

## A.   LEGAL STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc*., 61 F.3d 313, 315 (5th Cir. 1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[39] Nathan Williams Deposition, 64:15-19, Ex. 3.
[40] Nathan Williams Deposition, 23:2-24, Ex. 3.
[41] Nathan Williams Deposition, 23:16-24, Ex. 3.

**B.**   **DEFENDANTS GRAYCO AND PROTEK ARE NOT JOINT EMPLOYERS**

Under the FLSA, an employer is defined as, "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit relies on the economic reality test when determining a party's status as an employer under the FLSA. *Gray v. Powers,* 673 F.3d 352, 354 (5th Cir. 2012). Under the economic reality test, the Court must evaluate "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (citation and internal quotation marks omitted); *Williams v. Superior Hospitality Staffing*, No. 18-2793, 2019 WL 118013, at *4 (E.D. La. Jan. 7, 2019) (stating that "[E]ach individual or entity alleged to be an employer ... must satisfy the four-part test.); *Crosby v. Cox Communications, Inc*., No. 16-6700, 2016 WL 6403348, at *2 (E.D. La. Oct. 28, 2016) (using the economic realities test to determine whether there was an employment relationship for the purposes of the FLSA). However, a party need not establish each element in every case. *Id.* at 357. In joint employer contexts, each employer must meet the economic reality test. *Gray,* 673 F.3d 352, 355 (5th Cir. 2012).

In the instant case, Plaintiffs allege that Defendants Grayco and Protek "have acted and/or acting as a "Joint Employer" for all Plaintiffs…"[42]  Plaintiffs further assert that there is a "unified operation of control over their business enterprises, common work locations, common use of equipment and common illegal pay practices."[43]  Importantly, the Service Agreement which governed the work relationship between Grayco and Protek specifically states that Defendant Protek was an independent contractor of Grayco and no joint employer relationship existed;

---

[42] Plaintiffs' Original Complaint, ¶7 [Dkt. 1].
[43] Plaintiffs' Original Complaint, ¶7 [Dkt. 1].

7.        **Independent Contractor Status**

Contractor (referring to Protek) is an independent contractor, and neither Contractor nor Contractor's employees or contract personnel are, or shall be deemed, Grayco's employees.   In its capacity as an independent contract, Contractor agrees and represents and Grayco agrees, as follows:

(g) Contractor has the right to perform services for others during the term of this Agreement.

(h) Contractor has the sole right to control and direct the means, manner and method by which Services will be performed.

(i) Contractor has the right to hire assistants as subcontractors or use employees to provide the Services.

(j) The Services shall be performed by Contractor, Contractor's employees or contract personnel, and Grayco shall not hire, supervise, or pay any assistants to help Contractor.

(k) Neither Contractor nor Contractor's employees or contract personnel shall receive any training from Grayco in the professional skills necessary to perform the Services.

(l) Neither Contractor nor Contractor's employees or contract personnel shall be required by Grayco to devote full time to the performance of the Services.[44]
…

23.        **No Partnership and/Joint Employer Relationship**

23.1    Nothing in this Agreement shall operate or be construed as making Grayco and Contractor either partners, joint venturers, principals, joint employers, fiduciaries, agents or employees of the other.   The relationship between Grayco and Contractor will be that of an independent contractor relationship.   No employee, agent, affiliate or contractor retained by Contractor to perform work on behalf of Contractor or affiliates under this Agreement will be deemed an employee, agent, or contractor of Grayco or its affiliates. Contractor's obligation to comply with applicable state, federal or local laws does not create an employer-employee relationship between Grayco and Contractor or any of Contractor's personnel.[45]

---

[44] Service Agreement - Protek/Grayco (GRAYCO001039-1040), ¶7, pp. 3-4, p. 3 Ex. 2.
[45] Service Agreement - Protek/Grayco (GRAYCO001046), ¶23, p. 10, Ex. 2.

In addition to the contractual arrangement, the actual practices of Protek and Grayco during the relevant time period establish that no joint employment relationship existed. Assuming there are no material facts in dispute, whether a party is a joint employer is a question of law. *Karr v. Strong Detective Agency, Inc.,* 787 F.2d 1205, 1206 (7th Cir. 1986).  It is undisputed that, at all relevant times, Grayco did not meet the elements of "employer" as to Protek employees or independent contractors under the economic realities test.

### (1)   <u>Grayco did not hire or fire Protek employees or independent contractors.</u>

Plaintiffs cannot point to any evidence that Grayco hired or fired Protek employees or independent contractors.  Vu hires and fires Protek's cable technicians.[46]  He is not an employee, manager or corporate representative of Grayco.[47]  Grayco had its own Vice President of Operations, Nathan Williams.  Nathan Williams had the ability to hire or fire Grayco cable technicians only.[48]

Some of Grayco's former cable technicians decided to cease working for Grayco and then made the decision to work for Protek.[49]  Grayco did not designate or demand that any of its cable technicians work for Protek.[50]  In fact, Protek required that former Grayco cable technicians apply for work with Protek, a process which including completing an application, I-9 forms and direct deposit forms.[51]  Grayco was not involved in this hiring process.  Accordingly, the undisputed evidence establishes the Grayco did not hire or firs the Protek Plaintiffs.

---

[46] Lawrence Vu Deposition, 11:18- 12:9, Ex. 1.
[47] Lawrence Vu Deposition, 11:18- 12:9, Ex. 1.
[48] Nathan Williams Deposition, 104:1-17, Ex. 3.
[49] Nathan Williams Deposition, 223:20-25, Ex. 3.
[50] Nathan Williams Deposition, 218:7-225, Ex. 3.
[51] Lawrence Vu Deposition, 23:13-22, Ex. 1.

**(2)**   **Grayco did not supervise or control the work schedules of Protek's**
**employees or independent contractors.**

Protek confirmed that Grayco did not assign jobs to Protek cable technicians, this was a function done by Cox.[52]  During its operations in Louisiana, Protek had its own supervisors, that were not employed by Grayco.[53]  Protek employed supervisors Dwight Goines and Mario Gonzalez who were not employees of Grayco.[54]  Protek's Service Agreement contract with Grayco supports the absence of Grayco supervision or control of the Protek Plaintiffs as well.[55] Specifically, the Protek Service Agreement states:

> Contractor shall have a competent supervisor, who may be contacted at all times while Contractor's employees/personnel are performing the Services.
>
> Contractor must also provide one supervisor for every fifteen (15) technicians performing Services each day.[56]

Protek as the Contractor, was required to have its own supervisors and did in fact have its own supervisors.  Additionally, Protek's own Director of Operations confirmed that Grayco did not supervise its independent contractors.[57]

In *Martin v. Spring Break 83 Production, LLC*, 797 F. Supp. 2d 719, 728 (E.D. La. 2011), the Court analyzed a corporation's business relationship with a subcontractor and found that, under the economic realities test, even "where the corporation's business relationship with the subcontractor might have resulted in the corporation's exerting some control over the subcontractor's employees" this did not "address the central question of dependency." In *Martin*, plaintiff presented summary judgment evidence that a company called Big Sky, was an "umbrella"

---

[52] Lawrence Vu Deposition, 35:12-15, Ex. 1.
[53] Lawrence Vu Deposition, 21:5-9, Ex. 1.
[54] Protek Answers to Plaintiffs First Set of Interrogatories, Rog. No. 2, Ex. 4.
[55] Service Agreement - Protek/Grayco (GRAYCO001039), ¶6, p. 3 Ex. 2.
[56] Service Agreement - Protek/Grayco (GRAYCO001039), ¶6, p. 3 Ex. 2.
[57] Lawrence Vu Deposition, 115:4-6, Ex. 1.

company that controlled the production of the movie (at issue in the case), and that Big Sky's corporate headquarters handled employment related disputes that arose during the production of the movie. *Id.* at 723. Even with these facts, the Court found that there was no joint employer relationship because Big Sky did not hire the plaintiffs nor did it decide, control or approve their rate of pay. Similar circumstances exist in the instant case. Grayco did not supervise or control the work of Protek employees or independent contractors.

### (3)   Grayco did not determine the rate and method of payment of Protek independent contractors.

Grayco did not give Protek any guidance or instructions on how to pay or classify its cable technicians.[58] Mr. Vu confirmed that Protek solely determined the rate of pay for Protek cable technicians stating:

> Q:   And who determines how much you're going to pay per point to the technician?
>
> A:   We've determined that, Protek has determined that because that's what we've issued out on the price list when we met with them the first time we met.
>
> Q:   The first time you met with who?
>
> A:   The technicians…[59]

The Fifth Circuit has held that "the power to oversee dispute resolution concerning pay is not determinative of the power to make decisions regarding the rate or method of payment." *Martin,* 688 F.3d at 251. In *Martin,* two individuals were determined not to have controlled the rate or method of payment even though they had the authority to investigate payment-related complaints. In the instant case, Protek would contact Grayco to investigate a

---

[58] Nathan Williams Deposition, 205:17-24, Ex. 3.
[59] Lawrence Vu Deposition, 58:22-59:3, Ex. 1; see also Protek's Answers to Plaintiffs' First Set of Interrogatories, Rog. No. 3, Ex. 4.

dispute about a Protek cable technician's chargeback.[60]  However, like in *Martin*, Grayco had the authority to investigate this complaint with the provider, Cox Communications (the entity initiating the chargeback), but did not determine control of rate or method of payment of the Protek Plaintiffs.   Vu further testified:

> **Q:**  Does Grayco determine the rate of pay that Protek is going to pay its independent contractors?
>
> **A:**  No. They don't.[61]

These facts are fatal to this element of the economic realities test.  *Orozco v. Plackis,* 757 F.3d 445, 451 (5th Cir. 2014) (finding plaintiffs failed to meet the third element of the joint employer test where defendant did not set rate and method of payment).

### (4)    Grayco did not maintain Protek employee records.

There is no evidence that Grayco maintained any of Protek's employee records.  Grayco did not monitor, keep or review Protek payroll records.[62]  Accordingly, Plaintiffs will not be able to meet this element of the economic realities test.  *Gray v. Powers,* 673 F.3d 352, 357 (5th Cir. 2012).

In the instant case, Grayco did not control Protek's independent contractor cable technicians.  Any involvement by Grayco in safety and quality control is not the kind of "control" that is indicative of a joint employment relationship.  *See, e.g., Jacobson*, 740 F. Supp. 2d at 690 ("The nature of the control exercised by putative joint employer[s] is the key element in this analysis. This factor does not contemplate the generic control exercised by a supervisor over an independent contractor."). *In Thornton v. Charter Communications, LLC*, No. 4:12CV479SNLJ, 2014 WL 4794320 (E.D. Mo. Sept. 25, 2014), the district court explained:

---

[60] Lawrence Vu Deposition 71:3-9, Ex. 1.
[61] Lawrence Vu Deposition, 115:7-9, Ex. 1.
[62] Nathan Williams Deposition, 209:1-14, Ex. 3.

Plaintiffs emphasize the quality control measures that Charter [the cable company] undertook as an indication of employment. Plaintiffs' argument, however, "ignores the differences between affecting and supervising and controlling." Further, "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Id.* It is well established that measures such as tracking on-time arrivals, requiring Mainline [the installation company] to ensure quality performance and service, assistance with billing and activation for Charter customers, and requiring that Mainline technicians follow Charter technical specifications when installing Charter equipment are typical in a contractor relationship and do not establish joint employment. As set forth above, the district courts in *Zampos*, *Valdez*, *Lawrence*, and *Jacobson* all found that this type of quality control and compliance monitoring stem from the nature of the cable provider business and the need to provide reliable service to customers, not the nature of the relationship between the technicians and the cable provider, and do not establish joint employment by the cable provider.

Similar factual circumstances exist here.  The type of relationship between Grayco and Protek is that of a typical contractor relationship.  Even if Plaintiffs are able to provide some evidence of assistance from Grayco to track jobs performed through an app based or computer program called Penguin, this does not establish a joint employment relationship between Grayco and Protek.  Mr. Vu confirmed that Grayco was not involved in Protek's payroll or personnel records stating:

> **Q**:     And does Grayco determine how you, Protek, maintain your records, like personnel files or anything like that?

> **A**:     They don't.[63]

In sum, the undisputed evidence shows that all four factors of the economic reality test weigh decidedly in favor of Grayco. Further, as Plaintiffs are unable to prove employer status for Grayco, their claims under both the FLSA and Louisiana law against Grayco with regard to the Protek Plaintiffs should also be dismissed as a matter of law.

---

[63] Lawrence Vu Deposition, 115:15-28, Ex. 1.

C.    **WILLFULNESS**

FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations. 29 U.S.C. § 255(a). The plaintiff bears the burden of demonstrating willfulness. *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 356 (5th Cir. 1990).

A willful violation may be established by showing that management knew they were violating the FLSA. Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132–33 (1988); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127–28 (1985); *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir. 1990). Rather, an employer's violation is willful only if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." *McLaughlin,* 486 U.S. at 133, 108 S.Ct. 1677. When Grayco started operations in Louisiana in 2014, it did take steps to determine how companies that performed cable installation type work for Cox paid its cable technicians.[64]

In *Zannikos v. Oil Inspections (U.S.A.), Inc.,* 605 Fed. Appx. 349 (5th Cir. 2015), the plaintiffs argued that defendant recklessly disregarded whether plaintiffs (who were marine superintendents) were exempt from the FLSA. The *Zannikos* plaintiffs alleged that defendant knew of the FLSA's potential applicability, failed adequately to research the statute's applicability; and failed to consult with attorneys or the DOL on the matter. The Court found that these allegations "do not suffice to demonstrate willfulness."

> To be sure, an employer who "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134–35 (1988). An employer who fails to seek legal advice regarding its payment practices may be negligent, but its alleged violations are not willful. *See id.*; *see also Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990). Willfulness is a question of fact. *See Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993). Accordingly, summary judgment on the

---

[64] Nathan Williams Deposition, 37:5-38:8, Ex.3.

issue of willfulness is appropriate only "if the plaintiff has introduced evidence sufficient to support a finding of willfulness." *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (citing *Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 674 (5th Cir. 1991).

In the instant case, Grayco's former dealings with the United States Department of Labor in Texas as to its Texas cable technicians only show that they knew what the Department of Labor stated as to the FLSA's applicability to the cable technicians involved in that audit at that time. Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention. *See Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.,* 579 F.3d 546, 553 n. 24 (5th Cir.2009). There is no evidence that Grayco actually knew that its pay practices in Louisiana with regards to cable technicians involved in this lawsuit was in violation of the FLSA or that it ignored complaints that were brought to its attention.

At most, Grayco may have been negligent in believing that it was complying with the FLSA by adhering to the industry standards in Louisiana and the pay practices employed by multiple other cable subcontractor companies performing work for Cox Communications, and at the request of some of the Plaintiffs themselves.[65] An employer who acts without a reasonable basis for believing that it was complying with the FLSA or fails to seek legal advice regarding its payment practices is merely negligent. *Zannikos v. Oil Inspections (U.S.A.), Inc.,* 605 Fed. Appx. 349 (5th Cir. 2015) (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 134-35 (1988); *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir. 1990)). The Plaintiffs have failed to put forth evidence that Grayco knew that it was violating the FLSA or recklessly disregarded a potential violation. Accordingly, Grayco did not willfully violate the FLSA, summary judgment should be granted on that issue, and the two-year statute of limitations should apply to Plaintiffs' claims. *Farrow v.*

---

[65] Nathan Williams Deposition, 64:15-19, Ex. 3.

*Ammari of Louisians, Ltd.,* 2017 WL 2812930, at *6 (E.D. La. June 29, 2017) (holding defendant was entitled to summary judgment finding that plaintiff's cause of action for unpaid minimum wages is subject to the two-year statute of limitations.).

## D.   PLAINTIFFS' RETALIATION CLAIMS UNDER THE FLSA

To make a claim of FLSA retaliation, plaintiff must first make  showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action.   *Holt v. JTM Indus., Inc.,* 89 F.3d 1224, 1225–26 (5th Cir. 1996).   If plaintiff meets this burden, defendant must then articulate a legitimate, non-retaliatory reason for its decision. The burden then shifts back to plaintiff to demonstrate that "the proffered reason is a pretext" for retaliation.   *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998).

As an initial matter, some of the actions asserted by Plaintiffs do not qualify as adverse actions.  *Holloway v. Dept. of Veterans Affairs,* 309 Fed. Appx. 816, 818 (5th Cir. 2009) ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Stephens v. City of Bastrop,* No. 3:10–CV–1102, 2011 WL 5402197, at *8 (W.D. La. Nov. 3, 2011) ("[The defendant's] actions, although unfavorable and undesirable to [the plaintiff], did not cause her injury or harm, as required to be actionable retaliation."); *Pugni v. Reader's Digest Ass'n, Inc.,* No. 05 Civ. 8026, 2007 WL 1087183, at *23 (S.D.N.Y. Apr. 9, 2007) (finding "[a supervisor's] alleged 'threat' that plaintiff's days at Reader's Digest are numbered did not constitute a materially adverse action" where the threat was never carried out); *see also Bridgeforth v. Jewell,* 721 F.3d 661, 663–64 (D.C.Cir.2013) ("For ... alleged harms to be materially adverse, ... they must not be 'unduly

speculative.' ").  Plaintiffs allegations that it did not receive tax documents is not an adverse action under the FLSA.

A causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based on knowledge of the employee's protected activity. *See Ackel v. Nat'l Comm'cns, Inc.,* 339 F.3d 376, 385–86 (5th Cir. 2005) (internal citations omitted); *see also Eberle v. Gonzales,* 240 Fed. Appx. 622, 629 (5th Cir. 2007) (internal citations omitted). "The 'causal link' element of the prima facie case is satisfied when the plaintiff shows that the employment decision and his protected activity were not wholly unrelated. *Simmons v. Camden Cnty. Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir. 1985), *cert. denied,* 474 U.S. 981 (1985)). Plaintiffs cannot establish that any (1) decreased compensation, (2) decrease in job assignments, (3) increase in charge-backs, (4) failure to provide tax documents and/or (5) failure to provide paychecks even occurred after each Plaintiffs' participation in this lawsuit. The plaintiff carries the burden to prove that the protected activity was a but-for cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, (2013)). Therefore, even if Plaintiffs provide evidence that any of the aforementioned actions occurred after their participation in this lawsuit, Plaintiffs still fail to meet their burden to show there is a causal link between their participation in this lawsuit and any of those alleged actions.  Accordingly, Plaintiffs are not able to meet a prima facie case of retaliation under the FLSA.

Here, assuming (for purposes of this Motion only) that Plaintiffs can meet their *prima facie* burden, Grayco has established legitimate, non-retaliatory reasons for Plaintiffs potentially receiving less work at some point in time after this lawsuit was filed and thus in some instances,

earning less in wages due to this lower volume.[66]   After this lawsuit was filed and before Grayco made the business decision to cease operations in Louisiana, Grayco began receiving less fulfillment work from Cox, which is the type of work that was performed by Plaintiffs in Louisiana who worked for Grayco as cable technicians.[67]   Any decrease in work assigned to Plaintiffs was not attributable to this lawsuit, but instead was attributed to Grayco receiving less work directly from Cox.  The work "is seasonal" and decrease in volume is because "work goes up and down. Its just ebbs and flows of the business."[68]

Plaintiffs are unable to present any evidence that they (1) received less compensation, (2) received less job assignments, (3) received more charge-backs, (4) were not provided tax documents and (5) were not provided paychecks, as a result of their participation in this lawsuit, or any other participation in protected activity under the FLSA.[69]   There is no evidence that Grayco's legitimate non-retaliatory reasons for the slowing of work in Louisiana and its eventual business decision to cease operations in Louisiana were pretext for retaliation or in any way connected to Plaintiffs participation in this lawsuit.  Also, Plaintiff Miguel Peters alleges in the First Amended Complaint in this lawsuit that he was defamed and prevented from starting new employment after his employment ended with Grayco.  Plaintiffs have provided no evidence that such actions occurred or if they did (which Grayco asserts they did not), that they had any causal connection to his participation in this lawsuit.

In order to carry Plaintiffs' burden at the pretext stage of the FLSA retaliation analysis, Plaintiffs must show that they would not have faced the adverse actions claimed but for engaging

---

[66] Grayco does not admit that all Plaintiffs received less work at some point in time after filing this lawsuit. However, Grayco acknowledges that work available to the company as a whole and in turn to its cable technicians did decrease in some cases in the months prior to it ceasing operations in Louisiana in 2019.
[67] Nathan Williams Deposition, 23:2-24, Ex. 3.
[68] Nathan Williams Deposition, 23:16-24, Ex. 3.
[69] See Plaintiffs First Amended Complaint, ¶78 [Dkt. 44].

*Defendant Grayco's Memorandum in Support of Motion for Partial Summary Judgment*          **21**

in protected activity under the FLSA (in this case filing or joining this lawsuit). *See Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996). "While this portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 685 (5th Cir. 2001); *see also Long,* 88 F.3d at 305 n. 4 ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct."). In *Lackey v. SDT Waste & Debris Services, LLC*, No. 11-1087, 2014 WL 3866465 at *4 (E.D. La. Aug. 6, 2014), plaintiffs provided a declaration claiming to have been physically attacked when bringing up a complaint about overtime but did not provide any testimony as to what was said by the employer during that incident with regards to overtime and provided shot interrogatory answers claiming to have been terminated because they complained about overtime. Even with this evidence the Court found that plaintiffs failed to establish a genuine issue of material fact and dismissed the their FLSA retaliation claim with prejudice. *Id.* at *4. There is no evidence here to meet the but-for causation standard of FLSA retaliation and the factual circumstances do not even rise to the level in *Lackey.* Therefore, there is no issue of fact and Plaintiffs retaliation claims should be dismissed as a matter of law.

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, Grayco respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss Plaintiffs' retaliation claims and find as a matter of law that Grayco and Protek do not qualify as joint employers and Defendant Grayco did not engage in activity that rises to the level of willfulness under the FLSA.

Respectfully submitted,

*/s/ Gregg M. Rosenberg*

Gregg M. Rosenberg - *Pro Hac Vice*
USDC SD/TX No. 7325
Texas State Bar ID 17268750
Tracey D. Lewis - P*ro Hac Vice*
USDC SD/TX No. 212007
Texas State Bar ID 24090230
ROSENBERG & SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)

OF COUNSEL:
ROSENBERG & SPROVACH                              ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon

all counsel of record via CM/ECF, on this 24th day of December 2019.

**Attorneys for Plaintiffs**                      **Attorneys for Protek Communications, Inc.**

Douglas R. Kraus                                  John L. Young
Chelsea Brener Cusimano                           Matthew W. Langenberg
Susannah McKinney                                 915 St. Louis Street
BRENER LAW FIRM, LLC                              New Orleans, LA 70112
3640 Magazine                                     jly@aol.com
Street New Orleans, Louisiana 70115               mwl@johnyounglaw.com
cbcusimano@brenerlawfirm.com
dkraus@brenerlawfirm.com                          Jean-Paul Robert
smckinney@brenerlawfirm.com                       8148 Highway 44
                                                  Gonzales, Louisiana 77037
                                                  jpr@attorneyatlawllc.com

                                                  */s/ Gregg M. Rosenberg*
                                                  GREGG M. ROSENBERG